**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Barbara Riddle,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Barbara Riddle, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

2

## JURISDICTION AND VENUE

8.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §§1331.

9.    Venue is proper in the Florence Division because the Plaintiff resides in Darlington County and the Defendant transacted business in this division.

## PARTIES

10.    Plaintiff, Barbara Riddle, is a resident and citizen of the State of South Carolina, Darlington County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.    Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.    Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit

Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; failed to reinvestigate Plaintiff's disputes; and failed to block fraudulent information after receipt of a police report. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     In April, 2024, Plaintiff became the victim of identity theft when an unknown third party opened an American Express credit card account in her name without her knowledge or permission.

17.     On or about May 2, 2024, Plaintiff received a credit card in the mail from American Express.  Plaintiff immediately contacted American Express and informed them she did not open the credit card account.  Thereafter, Plaintiff mailed the original credit card back to American Express.

18.     On March 14, 2025, Plaintiff filed a police report with the Darlington County Sheriff's Office regarding the theft of her identity.  Plaintiff specifically identified the American Express credit card account as having been fraudulently opened in her name.

19.     In April 2025, Plaintiff contacted Defendant and placed a credit freeze on her Experian credit file.  At that time, Plaintiff also requested a copy of her credit report from

Defendant.

20.     On or about April 29, 2025, Defendant sent Plaintiff a letter confirming that the credit freeze had been placed on Plaintiff's Experian credit report.  However, Defendant did not provide Plaintiff with a copy of her credit report.

21.     On or about June 9, 2025, Plaintiff, with the help of her daughter, went online to www.annualcreditreport.com to obtain a copy of her Experian credit report.  Unfortunately, Plaintiff's request for her Experian credit report was again denied.

22.     However, on that same day, Plaintiff was able to obtain a copy of her Equifax credit report. Upon review of her Equifax credit report, Plaintiff discovered that American Express was reporting a fraudulent credit card account, American Express Account No. *6083, (hereinafter the "Account"), as a derogatory account, belonging to her.  Specifically, the Account was reporting as opened on April 2, 2024, with a balance due of $10,556, and closed on November 21, 2024.

23.     On or about June 20, 2025, Plaintiff sent a dispute letter to Defendant (**"First Dispute"**).  Plaintiff informed Defendant that she was the victim of identity theft in April of 2024.  Plaintiff stated she did not have a copy of her Experian credit report, but that she had obtained a copy of her Equifax credit report and discovered the fraudulent Account was reporting on her credit report as a derogatory account.  Plaintiff disputed the Account as a fraudulent account opened in her name without her knowledge or permission, and requested Defendant remove the Account if it was reporting on her Experian credit report. Plaintiff also disputed the reporting of any hard inquiries by American Express and requested Defendant remove them from her credit report.  Finally, Plaintiff requested

5

Defendant confirm that a fraud alert was currently on her Experian credit file.

24.     Defendant received Plaintiff's First Dispute on July 2, 2025.

25.     On or about July 23, 2025, Defendant sent Plaintiff its Dispute Results, wherein Defendant informed Plaintiff that the Account had been verified as accurate and information unrelated to Plaintiff's dispute had been updated.  Accordingly, Defendant continued to report the derogatory Account as belonging to Plaintiff on her Experian credit reports.

26.     On or about August 13, 2025, Plaintiff sent a second dispute letter to Defendant **("Second Dispute")**.  In this letter, Plaintiff informed Defendant she had received the results of Defendant's reinvestigation into her dispute, but the Account continued to be reported on her credit report.  Plaintiff again informed Defendant she was the victim of identity theft and that the Account was opened in her name without her knowledge or permission.  Plaintiff asked Defendant to remove the fraudulent Account from her credit report.  Plaintiff also disputed hard inquiries from Bank of America, Citi Cards, JPMCB, and Capital One which all occurred in April of 2024, as she had not applied for credit with any of the listed entities.   Finally, Plaintiff requested that Defendant confirm that a fraud alert had been added to her credit report.  In her letter, Plaintiff provided Defendant her full social security number, date of birth, and address.

27.     Defendant received Plaintiff's Second Dispute on August 26, 2025.

28.     On or about August 28, 2025, Defendant sent Plaintiff a letter stating it had received her dispute, but refusing to take any action because Defendant did not believe Plaintiff had sent the dispute herself.  Plaintiff was instructed to call Defendant to confirm her dispute.

6

29.     Thereafter, Plaintiff called the phone number provided by Defendant and confirmed she sent in the dispute letter regarding the fraudulent American Express Account.

30.     Plaintiff never received a response from Defendant to her Second Dispute letter or her telephone call.

31.     On or about October 29, 2025, Plaintiff sent a third dispute letter to Defendant ("**Third Dispute**").  In this letter, Plaintiff informed Defendant that she had never received a response to her August 13, 2025, dispute nor to her telephone call wherein she confirmed she had sent the dispute letter.  Plaintiff reiterated that she had been the victim of identity theft and that the Account was a fraudulent account opened in her name without her knowledge or permission.  Plaintiff also disputed hard inquiries by Bank of America, Citi Cards/Citibank, JPMCB Card, and Capital One NA – all made in April of 2024, as fraudulent and requested they be removed from her credit report.  Finally, Plaintiff requested that Defendant confirm a fraud alert had been added to her Experian credit report. With her dispute letter, Plaintiff provided a copy of the police report she filed regarding the theft of her identity, and a copy of her driver's license.  Plaintiff also provided Defendant her full social security number, date of birth, and address.

32.     Defendant received Plaintiff's Third Dispute on November 4, 2025.

33.     On November 10, 2025, Defendant notified Plaintiff via email that it refused to block the fraudulent Account from her credit file.

34.     On November 10, 2025, Defendant also emailed Plaintiff a link to obtain the results of Defendant's reinvestigation of her Third Dispute.  In these dispute results, Defendant notified Plaintiff that the inquiries by JPMCB Card, Capital One, Citi Cards, and Bank of

America had been removed and that disputed Account was not currently listed on Plaintiff's credit report.

35.     While Defendant was reporting the Account as belonging to Plaintiff on Plaintiff's credit file, Plaintiff's Experian credit report was viewed by Syncb/Belk, Bank of America, BWell Now/DMS, Capital One Financial, Caro Federal Credit Union, Credit One Bank, Ginnys/DM Services, LexisNexis/INS/P&C; LexisNexis/INS/State Farm, LN/AAA Michigan, ML/SAFE FCU, Montgomery Ward/DM Serv, Progressive Insurance, Seventh Avenue/DM Servi, TD Bank, and other third parties.

36.     Defendant failed to make a reasonable reinvestigation into Plaintiff's disputes.

37.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

38.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than

merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

39.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

40.    The Plaintiff adopts the averments and allegations of paragraphs 16 through 39 hereinbefore as if fully set forth herein.

41.    Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a); and (d) and failing to provide Plaintiff with a copy of her credit file when requested, as required by 15 U.S.C. §1681g.

42.    Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

43.    Due to Defendant's failure to comply with the requirements of the FCRA, the Plaintiff is entitled to statutory damages.

9

44.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered damage to her credit and credit reputation, and lost credit opportunities. Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to correct her credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

45.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

46.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

47.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## COUNT TWO
(Fair Credit Reporting Act)

48.     The Plaintiff adopts the averments and allegations of paragraphs 16 through 47 hereinbefore as if fully set forth herein.

49.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and c) and failing to provide Plaintiff with a copy of her credit file when requested, as required by 15 U.S.C. §1681g.

50.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

51.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit

10

Reporting Act, Plaintiff is entitled to statutory damages.

52.    As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered damage to her credit and credit reputation, and lost credit opportunities.  Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to correct her credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

53.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

54.    In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

55.    Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

56.    Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For this trial to be heard by a jury; and

E.    For such other and further relief as the Court may deem just and proper

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court Suite 103
Columbia, South Carolina 29223